## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## ALBANY DIVISION

| | | |
|---|---|---|
| **SANDRINI SCOTT, Individually** | ) | |
| **and as Personal Representative** | ) | |
| **of the Estate of Decedent** | ) | |
| **FABIAN AVERY, III,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No.   1:12-CV-117(WLS)** |
| **v.** | ) | |
| | ) | |
| **THE CITY OF PELHAM,** | ) | **JURY TRIAL DEMANDED** |
| **GEORGIA, through DOUG** | ) | |
| **WESTBERRY, CITY MANAGER;** | ) | |
| **PELHAM POLICE DEPART-** | ) | |
| **MENT, through CHIEF NEALIE** | ) | |
| **McCORMICK; CHRISTOPHER** | ) | |
| **COX; JESSICA DAVIS;** | ) | |
| **SANDRA EDWARDS;** | ) | |
| **ROLAND M. BROWN, M.D.;** | ) | |
| **CORRECTIONAL MED, INC.;** | ) | |
| **and MARY L. KINCAID, LPN;** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

Plaintiff Sandrini Scott, Individually and as Personal Representative of the

Estate of Fabian Avery, III, a deceased minor, through her undersigned attorneys,

hereby files this Complaint against Defendants the City of Pelham, Georgia; the

Pelham Police Department; Christopher Cox; Jessica Davis; Sandra Edwards;

Roland M. Brown, M.D. and his company, Correctional Med, Inc.; and Mary L.

Kincaid, LPN; and shows the Court as follows:

## NATURE OF THE ACTION

1.     This case presents claims relating to the cruel and unusual treatment and ultimate death of 17-year-old Fabian Avery, III ("Avery"), Sandrini Scott's son.  Shortly after Avery was transferred from the Fulton County Jail to the Mize Street Detention Center in Pelham, Georgia, Avery began complaining of nausea, vomiting, abdominal and back pain and an inability to eat.  Within days of his initial complaints, Avery was so ill and weak that he repeatedly vomited and defecated on himself, and other inmates had to carry Avery to the doctor and assist him to take a shower.  The medical and correctional staff moved Avery to an unmonitored isolation cell known as "the hole" because he vomited, defecated and urinated on himself, his clothing and his mattress.  In the face of Avery's obvious pain, deteriorating condition and pleas for help from Fabian himself, from his family, and from other inmates, the medical, supervisory and correctional staff at the Mize Street Detention Center stood by and was deliberately indifferent to his serious medical needs.  This inaction was due, in substantial part, to deficient policies of the City of Pelham and the Pelham Police Department, which failed to provide sufficient, qualified medical staff and failed to train their non-medical staff to recognize and respond to serious medical conditions.  On March 18, 2011, after enduring what can only be described as physical and mental torture, Avery was

found dead, lying in his own feces on a soiled mattress on the floor of his isolation cell.

2.     But for the deliberate indifference of the jail's medical, supervisory and correctional staff, and the policies and customs of the City of Pelham and the Pelham Police Department that fostered such deliberate indifference, Avery's untimely, excruciating death from infection due to a ruptured appendix would not have occurred.

3.     Fabian Avery's mother pursues claims under 42 U.S.C. § 1983 and the Eighth Amendment of the United States Constitution in that her son was subjected to cruel and unusual punishment, and for his wrongful death due to medical malpractice under Georgia law.

## PARTIES, JURISDICTION AND VENUE

4.     Plaintiff Sandrini Scott is a resident and citizen of Fulton County, Georgia.  She brings this lawsuit both as the Personal Representative of the Estate of her son, Fabian Avery, III, deceased, to recover for violation of his civil rights, and individually to recover for his wrongful death.

5.     Defendant the City of Pelham, Georgia is a municipality in Mitchell County, Georgia.  The City of Pelham contracted with Fulton County, Georgia and the Fulton County Sheriff's Office for the detention of Fulton County Sheriff's Office Inmates in the City of Pelham Jail.   The Intergovernmental Service

Agreement Between the City of Pelham, Georgia and Fulton County, Georgia is attached as Exhibit "A".  Fabian Avery, III was a third-party beneficiary of that contract.  The City of Pelham, through Defendant the Pelham Police Department, operates the Pelham Municipal Jail (a/k/a the Mize Street Detention Center or Pelham Pre-Release Center), located at 410 Mize Street, Pelham, Georgia  31779. The City of Pelham can be served with process through Doug Westberry, City Manager, at 108 Hand Avenue West, Pelham, Georgia  31779.  The Pelham Police Department can be served with process through its Chief of Police, Nealie McCormick, at 159 Mathewson Avenue, Pelham, Mitchell County, Georgia 31779.

6.      The City of Pelham and the Pelham Police Department are referred to, collectively, as the "Pelham Defendants."  Plaintiff sues the Pelham Defendants for inadequate policies and procedures or customs that resulted in the deprivation of Fabian Avery, III's constitutional right to be free from cruel and unusual punishment.

7.      Defendant Roland Brown, M.D., apparently through his company, Defendant Correctional Med, Inc., contracted or otherwise arranged or agreed to provide medical services for inmates at the Mize Street Detention Center in Pelham, Georgia.  Fabian Avery, III was a third-party beneficiary of such contract or agreement.  During the relevant time period, Dr. Brown was the only physician to provide medical services at the Mize Street Detention Center.  Defendant

Correctional Med, Inc. is a Georgia corporation with its principal place of business in Colquitt County, Georgia. Dr. Brown, personally, and Correctional Med, Inc., by and through Dr. Brown, can be served with process at 2801 S. Main Street, Moultrie, Colquitt County, Georgia 31768. Dr. Brown is the Registered Agent for Correctional Med, Inc. In their work at the Mize Street Detention Center, and in their dealings with Avery in particular, Defendants Dr. Brown and Correctional Med, Inc. were acting under color of state law.

8.   Defendants Christopher Cox and Sandra Edwards were Correctional Officers at the Mize Street Correctional Center at all times relevant to this Complaint. Defendants Cox and Edwards can be served with process at their place of work, the Mize Street Detention Center, 410 Mize Street, Pelham, Georgia 31779. Defendants Cox and Edwards were, at all relevant times in their dealings with Avery, acting under color of state law.

9.   Defendant Jessica Davis was the lead Supervisor of the Mize Street Detention Center at all times relevant to this Complaint. Defendant Davis can be served with process at her place of work, the Mize Street Detention Center, 410 Mize Street, Pelham, Georgia 31779. Defendant Davis was, at all relevant times in her dealings with Avery, acting under color of state law.

10.   Defendant Mary L. Kincaid, LPN, was the only nurse at the Mize Street Detention Center at all times relevant to this Complaint. Defendant Nurse

Kincaid can be served with process at her place of work, the Mize Street Detention Center, 410 Mize Street, Pelham, Georgia  31779 or, alternatively, at her home address, 270 County Lane Road, Damascus, Georgia  39841.  Defendant Nurse Kincaid was, at all relevant times in her dealings with Avery, acting under color of state law.

11.    The requisite *ante-litem* notices have been provided in accordance with O.C.G.A. § 36-33-5(b).

12.    This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 in that claims are asserted under 42 U.S.C. § 1983 and the Eighth Amendment to the United States Constitution.   In addition, this Court has supplemental jurisdiction over the wrongful death and other state-law claims per 28 U.S.C. § 1367.

13.    This Court has personal jurisdiction over the Defendants because at all relevant times hereto, the Pelham Defendants are municipal subdivisions of the State of Georgia, Correctional Med, Inc. transacted business in and continues to transact business in the State of Georgia, and the individual Defendants are residents of the State of Georgia who are employed at a facility located in Mitchell County, Georgia.

14.     Venue is proper in this Court and in the Albany Division of this Court because several defendants reside in Pelham County, per 28 U.S.C. § 1391(b) and L.R. 3.4, M.D. Ga.

## FACTS

15.     Fabian Avery, III ("Avery") was initially incarcerated at the Fulton County Jail, beginning on or about December 6, 2010.  Due to overcrowding at the Fulton County Jail, on or about February 15, 2011, Avery was transferred by the Fulton County Sheriff's Office to the Pelham Municipal Jail, a/k/a Mize Street Detention Center ("Mize Street" or "the Subject Facility").

16.     A physical examination of Avery was conducted by the Fulton County Jail Medical Department on December 8, 2010.  Avery's temperature was 97.0, blood pressure 100/60, height 6'1" and his weight was 153 pounds.  He was a healthy male, receiving no medications.

17.     On February 8, 2011, before Avery's transfer, Fulton County Jail completed a "Health Summary Transfer Form", which indicated Avery had no current acute or chronic conditions.  Avery arrived at Mize Street with no known medical problems, and initially Mize Street inmates and correctional personnel observed Avery to be well nourished and physically fit.  The City of Pelham and the Pelham Police Department contracted not to receive inmates suffering from "serious medical conditions" from Fulton County and agreed to notify the Fulton

7

County Sheriff's Office within 24 hours of an inmate's development of a serious medical condition while at the Pelham City Jail.  (*See* Exhibit "A" hereto at Art. III, ¶ 2).

18.   On or about Friday, February 24, 2011, Avery began complaining about stomach pain and not being able to get out of his bunk.  Correctional Officer Sandra Edwards ("Defendant Edwards") and Supervisor Jessica Davis ("Defendant Supervisor Davis"), in particular, were aware of Avery's complaints that his stomach was hurting, and an inmate told Defendant Edwards that Avery was vomiting.  Avery also began to experience nausea, diarrhea and inability to eat. Inmates helped Avery up and to walk.

19.   On February 24, 2011, Avery complained of nausea and vomiting to Mary L. Kincaid, LPN ("Defendant Nurse Kincaid").  Defendant Nurse Kincaid was the only nurse at Mize Street during the relevant time period.  Defendant Nurse Kincaid gave Avery Bismatrol (30 cc).  Avery later complained of nausea and vomiting to Defendants Edwards, Nurse Kincaid and others, and Defendant Nurse Kincaid gave Avery 50 mg of Dramamine.  During the night of February 25, 2011, Avery again complained of nausea and was given 150 mg of Ranitidine.

20.   February 25-26, 2011 was a weekend.  On or about February 26, 2011, Defendant Supervisor Davis was notified by inmates that Avery had defecated on himself.

21.     On February 28, 2011 Avery complained of pain below his sternum and nausea.  Defendant Nurse Kincaid gave Avery 150 mg of Ranitidine.

22.     On March 1, 2011, Avery thought he had food poisoning.  Defendant Nurse Kincaid noted:  for approximately five days, Avery has complained of abdominal pain, vomiting, and unable to eat.

23.     As of March 1, 2011, Defendant Supervisor Davis was aware that Avery had soiled himself on several occasions.

24.     On Thursday, March 1, 2011, Avery was seen by Dr. Roland Brown ("Defendant Dr. Brown").  Defendant Dr. Brown was the sole physician at Mize Street.  Two inmates had to carry Avery into the examination room.  Avery complained of abdominal and lumbar pain, and vomiting blood.  Avery also had a hernia.

25.     Per his examination on or about March 1, 2011, Defendant Dr. Brown ordered moving Avery from the general population to an isolation cell, purportedly in case Avery had an infection, to obtain stool and vomitus samples, and so that Avery's eating could be monitored by the correctional officers.  Isolation cells, however, do not contain cameras, sound monitors, intercoms or emergency call capability.  On March 1, 2011, no vomitus or stool sample was obtained.  No blood work or other testing was ordered.

26.     During the night of March 1, 2011, Avery complained of abdominal pain and was given Tylenol tablets.   On or about March 2, 2011, Avery complained to Defendant Nurse Kincaid that he had vomited all night long.  Avery produced the vomitus container containing a light green liquid.   Avery also produced a urine sample that was dark purple/black.  A fresh urine sample was obtained.  It was dark amber in color.  Defendant Nurse Kincaid performed a "dip test" on Avery's second urine sample, which basically indicated no blood or sugar in Avery's urine.  Avery refused lunch on March 2, 2011.

27.     On or about Saturday, March 3, 2011, Correctional Officer Christopher Cox ("Defendant Cox") had Avery take a shower because Avery had again soiled himself.  Avery complained to Defendant Cox about back pain.

28.     On or about March 3-4, 2011, Defendant Edwards spoke to Avery about Avery soiling himself.  Avery told Defendant Edwards he had tried to make it to the toilet in his isolation cell, but could not make it.  Defendant Supervisor Davis was directly aware at that time that Avery had not been eating much food.

29.     On or about March 4, 2011, Avery complained to Defendant Nurse Kincaid of continued stomach pain.   Defendant Nurse Kincaid gave Avery two tablets of Tylenol and 75 mg of Zantac.  At approximately 6:30 p.m. on March 4, 2011, Defendant Nurse Kincaid observed Avery upset and crying and Avery complained of vomiting all day.

30.    On or about March 7, 2011, in the morning, Avery refused to get up. Defendant Nurse Kincaid put Avery on a soft/liquid diet and purportedly instructed the staff to document how much Avery was eating.

31.    On or about March 8, 2011, Avery complained to Defendant Nurse Kincaid of bad back pain.  Avery was given Tylenol, two tablets.  On March 9, 2011, at approximately 8:00 a.m., Defendant Nurse Kincaid noted Avery's "skin warm and dry, color good, turgor good."  March 10-11, 2011 was a weekend.  For March 8-11, 2011, Defendant Nurse Kincaid noted that Avery was consuming his soft/liquid diet.

32.    According to other inmates in the isolation area, Avery, while in his isolation cell from on or about March 1, 2011 to March 11, 2011, often vomited and defecated and urinated on himself, his clothing and his mattress.  Avery also cried and complained of stomach pain, being hot, having no appetite, and not being able to breathe or catch his breath.  During this time, Avery also needed assistance in walking and showering.  Inmates cleaned Avery at least three times during this isolation period, and Avery's mattress and cell were constantly soiled with Avery's waste.

33.    Inmates housed in the Mize Street isolation area between March 1-11, 2011 heard, smelled and observed Avery's said health condition, and pleaded to Mize Street Correctional Officers, medical staff and other employees to help

Avery.  Mize Street Correctional Officers, medical staff and other employees also heard, smelled and observed Avery's said health condition, while Avery was in an isolation cell from March 1-11, 2011.

34.   Avery's family in Atlanta was notified by a Mize Street inmate's mother that Avery was sick and was not receiving needed medical care.  On Sunday, March 11, 2011, at about 8:40 p.m., Avery's father called the Mize Street facility from Atlanta and informed Defendant Davis that his son was sick and not getting medical care.  Defendant Davis responded that his son was receiving care from a nurse and was fine.  On March 11, 2011, Avery was returned to the general population, to Dorm #4.

35.   On or about March 12, 2011, at approximately 4:20 a.m., an outside party, McKamis Kelly, telephoned the Mize Street facility and advised Defendant Cox to take Avery to the local hospital.

36.   Between March 11-14 2011, while back in the general population (Dorm #4), Avery remained in obvious physical pain and upset, appeared weak, ate very little, and continued to vomit and defecate on himself.  Avery still required assistance in walking, getting water and showering due to his painful and weak condition.  During this period, at least two inmates carried Avery to the shower and supported him while one of them washed Avery's vomit, urine and feces off

12

Avery's body.  On occasion, inmates would put a chair in the shower for Avery to sit on, since he could not support himself.

37.    Between March 11-14, 2011, Avery could not straighten up due to abdominal pain.  On or about March 13, 2011, Defendant Davis and others observed Avery wearing a back brace that belonged to another inmate.  Avery wore the brace to help him walk and remain upright, since his abdominal pain caused him to be doubled over much of the time.  Avery complained to Defendant Davis of stomach and side pain and did not draw his evening meal on March 13, 2011.

38.    On or about Wednesday, March 14, 2011, Avery complained about a "rising on his butt" and Defendant Davis told Avery he could see the doctor on March 15, 2011.  Later on March 14, Defendant Davis was informed Avery had defecated on himself again and would not shower.  Inmates complained about Avery defecating on himself and Avery's smell and told correctional officers that they (the inmates) could no longer take care of Avery.  On this particular occasion, Defendant Edwards was aware that Avery asked someone to hold him up while he took a shower because he (Avery) had soiled himself again.  Instead of seeking medical assistance to determine the reason Avery continued to soil himself, Defendant Davis told Avery he would have to go back to isolation if he was going to soil himself.

39.     On or about March 14, 2011, correctional offers had Avery returned to the isolation area, cell P-28, solely because he was defecating and urinating on himself, and would – or could -- not clean himself up.

40.     On March 14, 2011, Avery also complained to Defendant Nurse Kincaid about a sore area on his buttocks.  Defendant Nurse Kincaid observed Avery had urinated on his mattress and that Avery had soiled himself and the cell.

41.     On or about Thursday, March 15, 2011, Avery was seen by Defendant Dr. Brown, who examined Avery's buttocks.  Defendant Dr. Brown found what he determined to be a clotted hemorrhoid and prescribed 500 mg of Keflex.  Defendant Dr. Brown observed that Avery had lost weight and spoke with him about the need to eat.

42.     On or about Friday, March 16, 2011, the Keflex was started. Defendant Nurse Kincaid observed Avery and noted that Avery would urinate and have bowel movements in his clothes.

43.     On or about Saturday, March 17, 2011, Defendant Davis was directly aware Avery was still complaining about stomach pain and diarrhea.  On or about March 17, at approximately 5:00 p.m., Avery complained to Defendant Nurse Kincaid that he could not swallow the antibiotic pills and that he had "boo booed" on himself.  Defendant Nurse Kincaid charted Avery "cont to refused to go to bathroom.  Cont to urinate and have BM in clothes or on the floor."

44.     On or about March 17, 2011, Defendant Davis called Defendant Cox to determine whether Avery had cleaned his soiled isolation cell.  Defendant Cox informed Defendant Davis that Avery had soiled himself again.  Defendant Davis responded to Defendant Cox that if Avery did not clean his cell during the night (of 3/17/11), that Avery was to clean it the next day.

45.     On Thursday, March 18, 2011, at or about 3:00 a.m., Defendant Cox, and Correctional Officers Hodge and Caison, found Avery in his isolation cell (P-28), unresponsive.  Avery's mattress for his bunk was lying on the floor, and Avery was lying on the mattress on his back, with his knees raised resting against the wall.  His eyes were open.  Avery's mattress and clothes were soiled with urine and feces.  There were also soil stains on the floor near the mattress.

46.     At that time, four uneaten food trays and two brown paper bags of bread, sandwich meat and cookies were found in Avery's isolation cell.

47.     While Avery was in the general inmate population, from on or about February 24 to March 1, 2011, and again from March 11 to March 14, 2011, numerous Mize Street inmates observed Avery's deteriorating health condition, including, but not limited to, Avery's severe and debilitating pain, nausea, vomiting, lack of eating, weight loss, and continuously defecating on himself, as described above.  During these periods, the inmates constantly informed Mize Street correctional officers, including the named defendant correctional and

supervisory officers, medical staff and other employees, of Avery's condition as described above, and the inmates constantly told them Avery needed outside medical attention.

48.     From on or about February 24 to March 17, 2011, while Avery was in either the general population or in isolation, the correctional officers and other employees of Mize Street, including the named defendant correctional officers, as well as Defendant Nurse Kincaid and Defendant Dr. Brown, were directly aware of and personally observed Avery's deteriorating health condition, including, but not limited to, Avery's severe and debilitating pain, nausea, vomiting, lack of eating, substantial weight loss, and continuously defecating on himself, as described above.  They were also directly aware of and observed inmates assisting Avery, including carrying Avery to and from the shower.  During this time, these persons knew Avery was extremely ill and needed outside medical attention/hospitalization.

49.     During the time Avery was in isolation, and with knowledge Avery had soiled his isolation cell, his mattress and himself, neither Defendant Edwards nor other correctional officers (*e.g.*, Defendants Davis and Cox) nor Nurse Kincaid would have Avery and his cell cleaned up for long periods of time.  Avery often had to lie in his soiled clothes and on his soiled mattress all day and night.

50.     While at Mize Street, Avery had a several week history of nausea, vomiting, defecating on himself, anorexia, abdominal and back pain, and pain on palpation of his right inguinal hernia.  Notwithstanding Avery's health history while at Mize Street, no health care professional saw or treated Avery other than Defendants Dr. Brown and Nurse Kincaid.  Said healthcare professionals were present at the subject facility on a limited basis.  No blood work (complete blood count) for Avery was ever ordered, no stool sample was obtained, and Avery was never thoroughly and properly examined or taken to a local hospital, such as Mitchell County Hospital.

51.     Defendants Nurse Kincaid and Dr. Brown, as well as the Defendant prison officials, knew that the course of treatment for Avery was largely, if not wholly, ineffective, and Defendants did not do anything more to attempt to improve Avery's condition.

52.     Defendants knew the medication provided to Avery was not treating the severe pain he was experiencing, and was not making him better, and further knew that Avery could not control his bladder or his bowels.

53.     Between February 24 and March 17, 2011, Avery was in obvious physical pain, and in an obvious severely debilitating and deteriorating health condition, requiring qualified, reasonable medical attention (examination, diagnosis and treatment) in a hospital.

54.     On March 18, 2011, at approximately 3:00 a.m., Avery was declared

dead at the scene (isolation cell P-28, Mize Street Detention Center).  Avery died

from complications of bacterial peritonitis due to cecal/appendiceal ischemia and

rupture.     Possible etiologies of the decedent's bacterial peritonitis include

strangulation of bowel (cecum) in the decedent's right inguinal hernia with

subsequent rupture, or rupture of acute gangrenous appendicitis.  Cecal volvulus

may also result in intestinal obstruction, with subsequent ischemia and rupture.

55.     Findings at Avery's autopsy include three cecal defects (1 cm to 4 cm

each) which exhibit surrounding yellow-grey softening/necrosis; the appendix and

cecal volvulus could not be identified.  Other findings include brown, turbid, fecal-

like liquid/matter (500 ml) within the peritoneal cavity, thin bloody fluid (150 ml)

within the right pleural cavity, 100 ml of thin, bloody fluid with fecal-like

liquid/matter within the left pleural cavity, three defects (3 cm each) of the left

hemidiaphragm which exhibit surrounding yellow-gray softening/necrosis, soft

gray plaques diffusely involving the peritoneal cavity and peritoneal surface of the

left hemidiaphragm, and variable gray discoloration of the hepatic and splenic

capsules.

56.     At the time of his death Avery weighed 108 pounds (body mass =

15.1).  Avery lost approximately 45 pounds during his thirty (30)-day incarceration

at Mize Street.

## COUNT I
### Civil Rights Violation:
### 42 U.S.C. § 1983/ Eighth Amendment
### (Against the Pelham Defendants, Defendants Cox, Davis, Edwards, Dr. Brown, Correctional Med, Inc. and Nurse Kincaid)

57.    Plaintiff incorporates the facts from paragraphs 1-56 above by reference.

58.    As of February 15, 2011 up through his date of death, March 18, 2011, Avery was incarcerated at the Mize Street Detention Center and under the custody and control of the City of Pelham, the City of Pelham Police Department, and/or various City of Pelham employees/agents.  Furthermore, Avery, as a Mize Street inmate, had no access to medical care other than that provided by the detention facility.

59.    As described above, the Pelham Defendants and Defendants Cox, Davis, Edwards, Dr. Brown, Correctional Med, Inc., and Nurse Kincaid, intentionally denied Avery necessary medical care and/or their conduct indicated deliberate indifference to the serious medical needs of Avery, constituting cruel and unusual punishment in violation of Avery's rights under the Eighth Amendment of the United States Constitution.

60.    Avery had a serious medical need, in that his medical need was so obvious that even a lay person (*e.g*., the other inmates) easily recognized the necessity for medical attention.

61.    Defendants' acts and omissions described above were all committed under color of state law and were directly and exceedingly harmful to Avery, evidencing deliberate indifference to Avery's serious medical needs, offending the standards of decency in violation of the Eighth Amendment.

62.    Avery was allowed to deteriorate over a number of days, evidencing Defendants were obdurate and wanton in their acts/omissions as to Avery's serious medical needs, in that Defendants ignored and/or failed to address Avery's serious medical needs.

63.    Defendants knew that Avery had urgent medical needs that would be significantly exacerbated by delay and they did delay, and otherwise failed to provide urgent medical care.

64.    Defendants had knowledge of Avery's need for medical care and intentionally refused to provide that care and/or otherwise provided Avery with medical care that was so grossly incompetent or inadequate, amounting to no treatment at all, as to shock the conscience or to be intolerable to fundamental fairness.

65.    Defendants Dr. Brown, Correctional Med, Inc. and Nurse Kincaid failed to respond to, delayed in responding to, and/or provided grossly inadequate care for Avery's serious medical need, that was manifested by Avery's extreme debilitating abdominal pain, nausea, vomiting, defecating and urinating on himself,

inability to eat, loss of weight and other symptoms of a severe medical condition (which was actually appendicitis or a ruptured appendix or cecum).

66.     Defendants Dr. Brown (and Correctional Med, Inc., by *respondeat superior*), and Nurse Kincaid were further deliberately indifferent to Avery's serious medical needs in that, in spite of their direct knowledge of Avery's complaints and condition, as set forth above, (a) they violated a clear and specific standard, and similarly situated reasonable health care providers would have known their actions violated Avery's Constitutional rights; (b) they took an easier and less efficacious course of treatment than obtaining medical assistance for Avery's serious medical condition from a hospital; (c) they provided medication which was cursory and insufficient; (d) they did not do anything to alleviate Avery's severe abdominal and lower lumbar pain; and/or (e) they did not do anything to further a medical diagnosis for and treatment of Avery's serious medical condition, even as Avery deteriorated, lost weight and had increasing, persistent pain.

67.     The named Mize Street detention facility officials/employees were also deliberately indifferent to Avery's serious medical needs in that:

(a)     Avery's need for medical treatment was obvious even to a layperson, and the medical care provided was non-existent or so cursory as to amount to no treatment at all;

21

(b)     Avery's condition was due to be reported to the Fulton County Sheriff's Office within 24 hours of the development of his serious medical condition, but they failed to do so; and/or

(c)     Avery's access to medical care was delayed to the extent that it was tantamount to unnecessary and wanton infliction of pain.

68.     The Defendant prison officials and healthcare professionals, with knowledge of Avery's need for care, failed to provide care, delayed care, or provided grossly inadequate care, causing Avery to needlessly suffer the severe pain resulting from his illness/condition.

69.     Defendants allowed Avery to suffer over a number of days and weeks, even as his condition was deteriorating.

70.     Given the extent of the pain, suffering and deterioration faced by Avery during his month at the Mize Street facility as demonstrated by the facts stated above, Defendants were directly and subjectively aware of a substantial risk of serious harm to Avery's health and medical welfare, but knowingly disregarded that risk, evidencing more than gross negligence.

71.     Defendants engaged in risky conduct as to the care and treatment (or lack thereof) afforded Avery and knowingly provided grossly inadequate, and at times no care to Avery.

72.     Defendants Dr. Brown and Correctional Med, Inc. had supervisory authority over delivery of medical care in the Mize Street facility and failed to establish appropriate protocols for evaluation and treatment of physically ill prisoners, such as Avery, and such failure caused or contributed to Avery's persistent severe pain, deterioration and death.

73.     The Pelham Defendants had customs or policies and practices of:  (1) failing to ensure that adequate, competent medical staff were available to evaluate and treat inmates' serious medical conditions; and (2) failing to train correctional staff (and failing to ensure that contracted medical staff, including Defendants Dr. Brown and Correctional Med, Inc., trained correctional staff) to recognize, evaluate and respond appropriately to serious medical conditions and to medical emergencies.   These policies or customs were a moving force behind the deprivations of Avery's Constitutional rights.

74.     Avery had the Constitutional right to adequate health care, including the provision of onsite medical care along with referrals to community healthcare providers as necessary, and Avery was denied this right, causing Avery to suffer extreme pain and deterioration, eventually resulting in his death.

75.     Avery had the Constitutional right to be able to make his medical problems known.  Avery was denied this right by his being unduly confined to an unmonitored isolation cell and being denied access to on-duty, on-call medical

personnel, causing Avery to suffer extreme pain and deterioration, eventually resulting in his death.

76.     Avery had the Constitutional right to access care for any condition, if the denial of care might result in pain, suffering, deterioration or degeneration. Avery was denied his right to care and the denial of his right to care resulted in extreme pain, suffering, deterioration, degeneration and death.

77.     Avery had a Constitutional right to access competent medical staff to examine inmates to diagnose his illness, and Avery was denied this right in that Defendants Dr. Brown, his company Correctional Med, Inc. and Nurse Kincaid were not competent, and the policies and procedures or customs of the Pelham Defendants failed to ensure or even check their competency.     Defendants Dr. Brown, his company Correctional Med, Inc. and Nurse Kincaid failed to treat Avery's obvious serious medical condition, causing Avery to suffer extreme pain and deterioration, eventually resulting in his death.

78.     Avery had a Constitutional right to access to medical staff that is able to treat inmates' problems or to refer the inmates to outside medical services who can (*e.g.*, Mitchell County Hospital), and Avery was denied this right in that the medical staff, which was mostly absent or non-existent and whose competency and availability was not verified by the Pelham Defendants, was unable to treat his serious medical condition, failed to notify the Fulton County Sheriff's Office

within 24 hours of Avery's development of the serious medical condition, and failed to or refused to refer him to outside medical sources.

79.    Avery had a Constitutional right to treatment in a location conducive to medical functions, and Avery was denied this right by the lack of an adequate infirmary, by confinement in an unmonitored, unsanitary isolation cell while suffering a serious medical condition, and by failing to notify the Fulton County Sheriff's Office of Avery's serious medical condition, all of which caused Avery to suffer extreme pain and deterioration, eventually resulting in his death.

80.    Defendants failed to meet Avery's ordinary and normal health needs, including the relief of pain and suffering and prevention of deterioration, degeneration and death.

81.    Defendants' said acts and omissions produced and inflicted Avery with physical and mental torture and a lingering death, in violation of the Eighth Amendment.

82.    In addition to Defendants' foregoing violations of Avery's Eighth Amendment rights, Avery's Eighth Amendment rights were also violated in the following particulars:

        (a)    Defendants forcing and otherwise willfully having Avery to lie in his feces and urine, i.e., in his soiled clothes, on a soiled mattress and in a soiled cell, for many hours, including overnight on multiple occasions;

(b)    Defendants' failure or refusal to provide Avery with clean clothes, mattress and cell after he soiled same;

(c)    Defendants' failure to clean Avery and his cell after he vomited, defecated and urinated on himself, causing Avery to suffer in his own waste-soaked clothing and mattress for many hours;

(d)    Defendant Supervisor Davis' failure to address Avery's complaints of stomach and side pain on or about March 13, 2011, particularly following his history of similar complaints and other issues and when Avery did not draw his evening meal that day;

(e)    Defendant Supervisor Davis' failure to address Avery's deteriorating condition and continuing Avery's confinement to the isolation cell even though she was aware Avery was not eating and still complaining about stomach pain and diarrhea on March 17, 2011;

(f)    Defendant Edwards' failure to address Avery's deteriorating and weakened condition after she learned Avery had asked someone to hold him up while he took a shower after he soiled himself, on or about March 14, 2011;

(g)    Defendant Nurse Kincaid's failure to address Avery's deteriorating condition and have Avery and his isolation cell cleaned even

after observing Avery had urinated on his mattress and soiled himself and his cell, on or about March 14, 2011;

(h)     Defendant Nurse Kincaid's failure to address Avery's deteriorating condition and continuing Avery's confinement to the isolation cell even after she observed Avery on March 16, 2011 and charted he would urinate and have bowel movements in his clothes, and even though she was aware Avery was not eating;

(i)     Defendant Nurse Kincaid's failure to address Avery's deteriorating condition and continuing Avery's confinement to the isolation cell even after Avery complained to her that he could not swallow the antibiotic pills and told her he had "boo booed" on himself on March 17, 2011, and even though she documented Avery continued to urinate and have BM in his clothes or on the floor;

(j)     Defendant Dr. Brown's and Correctional Med, Inc.'s failure to address Avery's deteriorating condition, including Avery's continued failure to eat, and sending Avery back to the isolation cell, knowing Avery had a hernia and was experiencing pain, after having examined Avery on March 15, 2011 and observing Avery had lost weight;

(k)     Defendants Cox and Supervisor Davis' forcing or otherwise willfully having Avery to lie in clothes and on a mattress soiled with vomit, urine and feces, on the night of March 17, 2011; and

(l)     Defendants Cox and Supervisor Davis' failure to address Avery's deteriorating condition and continuing Avery's confinement to the isolation cell even though they were aware Avery had not eaten several meals and that he had soiled himself and could not clean himself, on the night of March 17, 2011.

83.     Defendants' said acts and omissions (identified in the preceding numbered paragraphs), constituting deliberate indifference, produced and inflicted physical and emotional injury and pain right up until the time of Avery's death, constituting cruel and unusual treatment of Avery.

84.     Defendants' violations of Avery's Eighth Amendment rights, as set forth above, were a direct and proximate cause of Avery's undue and extreme pain, suffering, deterioration and ultimate death, for which Plaintiff is entitled to recover as the Personal Representative of Avery's estate.

**COUNT II**
**Medical Malpractice/ Wrongful Death**
**(Against Defendants Dr. Brown, Correctional Med, Inc. and**
**Nurse Kincaid)**

85.     Plaintiff incorporates the facts from paragraphs 1-56 above by reference.

86.     Defendant Dr. Brown, acting at all times as an agent of his company, Correctional Med, Inc., was in a physician-patient relationship with Avery while Avery was incarcerated and being treated at the Mize Street facility.

87.     At all relevant times, Defendant Dr. Brown, acting through Correctional Med, Inc., and Nurse Kincaid were responsible for providing Avery with medical care and treatment in their respective capacities as the sole physician and nurse responsible for the medical care of inmates at the Mize Street facility.

88.     Defendant Dr. Brown had a duty to Fabian Avery to exercise that degree of care and skill ordinarily exercised by physicians under like or similar circumstances and conditions.

89.     Defendant Nurse Kincaid had a duty to Fabian Avery to exercise that degree of care and skill ordinarily exercised by LPNs under like or similar circumstances and conditions.

90.     Defendants Dr. Brown, Correctional Med, Inc., and Nurse Kincaid violated the applicable standards of care by failing to ensure that Fabian Avery received acceptable care and that he did not suffer injury or death.

91.     Due to the incompetence of and substandard care exercised by Defendants Dr. Brown and Nurse Kincaid, there is an absence of adequate contemporaneous charting/documentation about Avery's condition and medical

interventions and a failure to appropriately chart vital signs and medical administrations.

92.     Defendant Dr. Brown deviated from the standard of care and failed to exercise that degree of care and skill utilized by the medical profession generally under similar conditions and like surrounding circumstances, including but not limited to the following:

(a)     By failing to create, implement and operate an adequate and appropriate medical system at the Mize Street facility;

(b)     By failing to institute appropriate policies, procedures and/or protocols, including training other medical and correctional staff to recognize, evaluate, and respond appropriately to serious medical conditions;

(c)     By failing to appropriately and adequately supervise other medical personnel, including Defendant Nurse Kincaid;

(d)     By failing to examine, diagnose and treat Fabian Avery in accordance with prevailing standards of care; and

(e)     By failing in such other particulars later discovered and proven.

93.     Among other deviations from the applicable standard of care, Defendant Dr. Brown deviated from the applicable standard of care by adopting and implementing inadequate and inappropriate protocols and/or a system under

which Licensed Practical Nurses such as Defendant Nurse Kincaid and/or other unlicensed jail personnel were allowed to make diagnoses and to treat patients with medications and other medical interventions, though lacking the competency to do so.

94.     Defendant Dr. Brown further deviated from the standard of care by failing to examine Avery adequately, by failing to order and follow-up on medical/lab tests, by failing to consistently and appropriately take and chart Avery's vitals and otherwise treat his condition appropriately, and by failing to admit Avery to a hospital for necessary treatment of his weeks history of vomiting, nausea, inability to control his bowels and bladder, anorexia, substantial weight loss, and severe abdominal and back pain.

95.     Defendant Nurse Kincaid deviated from the standard of care exercised by Licensed Practical Nurses generally under like and similar circumstances by failing to appropriately monitor and respond to Avery's deteriorating condition, failing to consistently and appropriately take and chart Avery's vitals, failing to treat Avery's condition appropriately, and by failing to promptly inform a physician of Avery's deteriorating signs and symptoms so he could timely be seen and treated at a hospital.

96.     Avery's condition necessitated a timely referral to a hospital for admission and treatment of his weeks of continued nausea, vomiting, anorexia,

inability to control his bowels and bladder, abdominal and back pain, and other symptoms. It was risky and derelict for these Defendants not to refer and insist that Avery be transported to a local hospital under the circumstances.

97.     Defendant Dr. Brown breached the applicable standard of care by, without limitation, failing properly to train and supervise Defendant Nurse Kincaid and the other jail personnel, by failing properly to monitor and assess Defendant Nurse Kincaid and others' involvement in patient care, and by his implementation of an insufficient and improper medical care system under which incompetent personnel were effectively allowed to practice medicine without the involvement and/or supervision of Defendant Dr. Brown, the sole responsible physician at the Mize Street facility.

98.     The failures by Defendant Dr. Brown constitute professional medical negligence and a breach of the applicable standard of care and/or breach of Dr. Brown's or Correctional Med, Inc.'s agreement with the City of Pelham.

99.     The failures by Nurse Kincaid constitute professional medical negligence and a breach of the applicable standard of care.

100.     Fabian Avery would have survived with timely and appropriate medical intervention.

101.     As a direct and proximate result of the wrongful acts and omissions, *i.e.*, deviations from the standard of care, of Defendants Dr. Brown, Correctional

Med, Inc. (by and through Dr. Brown) and Nurse Kincaid, constituting professional medical negligence, Fabian Avery was caused to suffer significant and permanent injuries and damages, including excruciating pain, unnecessary suffering, and untimely death.

102.   Sandrini Scott is decedent Fabian Avery's mother and is entitled to recover for the wrongful death of her son, and all other damages properly recoverable under Georgia law.

103.   In addition, in her capacity as the Personal Representative of her son's estate, Sandrini Scott is also entitled to recover, on behalf of Fabian Avery's estate, for his funeral expenses, for his pain and suffering, both physical and mental, and all other damages recoverable under applicable law.

104.   Plaintiff has attached to this Complaint, as Exhibit "B", the Affidavit of Thomas Lincoln, M.D., which enumerates at least one violation of the applicable standard of care of Defendants Dr. Brown, Correctional Med, Inc. and Nurse Kincaid (and their employer) that proximately caused the damages suffered by Plaintiff's decedent Fabian Avery and/or the Plaintiff, in accordance with O.C.G.A. § 9-11-9.1.

### COUNT III
### Punitive Damages

105.   Plaintiff incorporates the facts from paragraphs 1-56 above by reference.

106.   The Defendants' conduct, as described above, evidences intentional actions, or, at the very least, a conscious and deliberate indifference to Fabian Avery's medical needs, such that Plaintiff is entitled to an award of punitive damages.

107.   The Defendants' conduct, as described above, evidences willful misconduct, malice, wantonness, oppression, or that entire want of care that would raise the presumption of a conscious indifference to consequences, entitling Plaintiff to an award of punitive damages under O.C.G.A. § 51-12-5.1 and any other applicable law.

## COUNT IV
### Attorneys' Fees and Costs Under 42 U.S.C. § 1988

108.   Plaintiff incorporates the facts from paragraphs 1-56 above by reference.

109.   Pursuant to 42 U.S.C. § 1988, Plaintiff is entitled to recover costs, including reasonable attorney and expert fees in litigation that successfully vindicates the civil rights of her son.

WHEREFORE, Plaintiff Sandrini Scott, individually and as Personal Representative of the Estate of her son, Fabian Avery, III, prays that:

(a)     This Complaint be filed, Summonses issued and service effected in accordance with law;

(b)     As the Personal Representative of the Estate of her son, that she have and recover for his civil rights claim under 42 U.S.C. § 1983, damages from Defendants based on the evidence and awarded in the enlightened conscience of the jury;

(c)     As Fabian Avery, III's mother, that she have and recover from Defendants the full value of the life of her minor son Fabian Avery, III, pursuant to O.C.G.A. § 51-4-4;

(d)     As the Personal Representative of the Estate of Fabian Avery, III, that she have and recover from Defendants general damages for Fabian Avery's pain and suffering, and special damages for medical, funeral and other expenses recoverable pursuant to O.C.G.A. § 51-4-5 and federal law;

(e)     That Plaintiff be awarded costs of this action, including attorney's fees and expert costs, as permitted by applicable law, including 42 U.S.C. § 1988;

(f)     That Plaintiff be awarded punitive damages against the Defendants, pursuant to O.C.G.A. § 51-12-5.1; and

(g)     That Plaintiff be awarded such other and further relief as this Court deems necessary, proper, and just.

Plaintiff demands a trial by jury of all issues so triable.

Dated:  August 9, 2012.

Respectfully submitted,

*/s/ Jay F. Hirsch*
**R. Timothy Morrison**
Georgia Bar No. 525130
**Jay F. Hirsch**
Georgia Bar No. 357185
**Kimberly J. Johnson**
Georgia Bar No. 687678
**M.J. Blakely**
Georgia Bar No. 708906
POPE, McGLAMRY, KILPATRICK,
MORRISON & NORWOOD, P.C.
3455 Peachtree Road, N.E., Suite 925
P.O. Box 191625 (31119-1625)
Atlanta, GA  30326-3243
(404) 523-7706
Fax (404) 524-1648
efile@pmkm.com

**Charles L. Webb**
Georgia Bar No. 743720
Charles L. Webb & Associates, LLC
2900 Chamblee Tucker Road, Building 1
Atlanta, GA  30341
(770) 455-1350
mrclw1@bellsouth.net

**M. Gino Brogdon, Sr.**
Georgia Bar No. 084252
Law Office of M. Gino Brogdon, Sr.
174 Walthall Street
Atlanta, GA  30316
(404) 643-2927
www.ginobrogdon.com